Following, the plaintiff's injury by accident on October 25, 1994, the defendants began paying temporary total disability benefits to the plaintiff at the rate of $160.01 per week. On May 9, 1995, the defendants prepared and submitted to the Commission a Form 24 application to stop payment of compensation to the plaintiff. Simultaneously, the defendants also prepared and submitted a Form 60 admission of employee's right to compensation.
By order dated August 11, 1995, Special Deputy Commissioner W. Bain Jones, Jr. approved the defendants' Form 24 application and authorized the defendants to terminate the plaintiff's temporary total disability payments retroactively to March 20, 1995. Special Deputy Commissioner Jones also denied the plaintiff's motion for reconsideration by order filed August 11, 1995.
Thereafter, the plaintiff requested a hearing in this matter, which was held before Deputy Commissioner Theresa B. Stephenson on September 10, 1996 in Winston-Salem.
In an Opinion and Award entered on May 8, 1997, Deputy Commissioner Stephenson denied the plaintiff claim for temporary total disability benefits, except for the period of time from November 1 to December 1, 1995. Deputy Commissioner Stephenson also rejected the plaintiff's contention that the plaintiff's average weekly wage should be calculated based upon the earnings of a comparable employee.
On October 25, 1994, Benny Sims, the plaintiff, sustained a compensable injury to his back while working for the defendant employer, Charmes/Arby's. At the time of his injury, Mr. Sims had been working for the employer for only a brief period of time as an assistant manager trainee.
Mr. Sims was initially treated at Kernersville Immediate Care and referred to Salem Orthopedics and Sports Medicine, where he was treated by Dr. Richard M. O'Keeffe, Jr., who diagnosed plaintiff's condition as multiple bulging discs. In June, 1995, the plaintiff was given a ten percent rating to his back and permanently restricted from significant bending and lifting more than 15 pounds. It was Dr. O'Keeffe's opinion that Mr. Sims could not return to the job he was performing at the time of his injury.
On March 20, 1995, Mr. Sims was seen for an independent medical evaluation by Dr. James Nitka, who diagnosed degenerative disc disease and recommended return to work within restrictions to be determined by an FCE. Following the FCE, the defendant employer declined to offer Mr. Sims employment.
On October 31, 1995, Mr. Sims reinjured his back and was hospitalized for a number of days thereafter. After recovering from his reinjury, Mr. Sims was offered employment in the management training program at K Mart, where he began working on July 29, 1996. At the time of the hearing, Mr. Sims was working at K Mart as a department manager.
The principal issue in this case concerns the plaintiff's concurrent self employment. At the hearing in this matter, Mr. Sims testified that since 1988 he has owned and — with the assistance of members of his family — operated a number of business enterprises, including a photography studio and a tax preparation service. Mr. Sims testified that he continued to own and operate these businesses during his brief employment with Charmes/Arby's, and that subsequent to his injury he continued to own and operate his businesses. Mr. Sims also testified that although he is now employed by K Mart, he continues to own and operate his businesses and that he intends to do so for the foreseeable future.
This case raises significant issues concerning the effect of dual or concurrent employment (or self-employment) upon an injured employee's right to receive temporary total disability benefits to replace lost earnings from a second job. Undoubtedly, the Commission will be called upon to resolve these issues as more people are compelled to supplement their income by taking second jobs. Fortunately for the plaintiff, in this case the Commission need not address these issues because the defendants, themselves, have resolved the issues in the plaintiff's favor.
In this case the defendants' began paying temporary total disability benefits to the plaintiff following his injury without entering into a compensation agreement or otherwise admitting liability for the compensation they were paying. Months later, when the defendants sought to terminate the plaintiff's benefits based upon his concurrent self-employment, the defendants prepared and submitted a Form 60 admission of employee's right to compensation. In other words, the defendants paid the compensation, and thereafter — with complete knowledge of all relevant facts — admitted that they owed it.
In holding that the plaintiff in this case failed to meet his initial burden of proving disability, Deputy Commissioner Stephenson and a majority of this panel distinguished a Form 60 admission from a Form 21 agreement. According to them, a Form 21 agreement both establishes the fact of disability and gives rise to the presumption that it continues, while a Form 60 admission does neither. This is clearly a mis-statement of the law.
In Kisiah v. W.R. Kisiah Plumbing, Inc., 124 N.C. App. 180,476 S.E.2d 434 (1996), the Court of Appeals reiterated the often held principal that a Form 21 agreement "is the equivalent of proof that [a] plaintiff is disabled," not because it is an agreement, but because it "represents an admission of liability by the employer for disability compensation pursuant to the Workers' Compensation Act." 476 S.E.2d at 436.
The Form 60 amounts to a judicial admission of the employee's entitlement to compensation. The Supreme Court has held that "judicial admissions are conclusive and binding in every respect." Estrada v. Burnham, 316 N.C. 318, 341 S.E.2d 538, 543 (1986). Having admitted that the plaintiff is entitled to compensation, the defendants cannot thereafter deny it based upon facts and circumstances known to them at the time of the admission.
Because the Form 60 admission establishes the fact of disability, the employee is thereafter entitled to a presumption that his disability continues until he returns to work (if not longer). See Kisiah, supra. In this case, the defendants have offered no evidence to rebut the presumption of that the plaintiff's disability continued until he returned to work at K Mart on July 29, 1996.
It must be noted that the defendants could have rebutted the presumption at any time after the plaintiff was released to return to work with restrictions, by offering the plaintiff work within those restrictions. The defendants, however, elected not to extend such an offer to the plaintiff, and they cannot now complain that he failed to look for suitable employment.
The proper method of calculating the average weekly wage in this case is by referring to a comparable employee.
Deputy Commissioner Stephenson and a majority of this panel held that the proper method of computing the plaintiff's average weekly wage in this case is based on plaintiff's actual earnings during the very brief time that the plaintiff worked as a trainee for the employer. They rejected the plaintiff's contention that in light of the very brief period of the plaintiff's employment and the fact that the plaintiff was being paid a training wage, it would be fairer and more just to use a comparable employee's first year wages. Their finding was apparently based upon the conclusion that the plaintiff had failed to establish the likelihood that he would have successfully completed his training period had he not been injured.
The clear implication of this conclusion is that had the plaintiff been able to establish that he would have in all likelihood successfully completed his training, the proper method of computing his average weekly wage would be by reference to the earnings of a comparable employee. The plaintiff respectfully submits that the evidence clearly establishes such a likelihood.
In making their determination that the plaintiff had failed to establish that he would in all likelihood pass his training, the Deputy and the majority of this panel apparently relied upon the testimony of Charles Freeman concerning the plaintiff's performance on a written test. A copy of the test had not been provided to plaintiff's counsel prior to the testimony of Mr. Freeman, despite counsel's request for such material in his letter of representation of May 15, 1995, which is included in the claim file. At the hearing, plaintiff's counsel's objection to the testimony was overruled, despite the clear prejudice to the plaintiff that resulted from counsel's inability to properly cross-examine Mr. Freeman. Thus, the plaintiff's objection to this testimony should have been sustained.
Even if Mr. Freeman's testimony concerning the test is allowed, his speculative and self serving testimony ought to be given little weight in light of the fact that the plaintiff successfully completed his management training at K Mart.
For the foregoing reasons, the plaintiff should be awarded temporary total disability benefits from the date of his injury, October 25, 1994, to the date he started work for K Mart, July 29, 1996. This cause should be remanded for the taking of additional testimony and receipt of evidence concerning the earnings of comparable employees, in order to determine the plaintiff's average weekly wage.
This 5th day of December, 1997.
 S/ _______________________ THOMAS J. BOLCH COMMISSIONER